**Douglas B. Thayer (8109)**
  *dthayer@djplaw.com*
**Jordan K. Cameron (12051)**
  *jcameron@djplaw.com*
**DURHAM JONES & PINEGAR, P.C.**
3301 N Thanksgiving Way, Suite 400
Lehi, Utah 84043
Telephone: (801) 375-6600
Fax: (801) 375-3865

*Attorneys for Plaintiff Purple Innovation, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PURPLE INNOVATION, LLC, <br><br>      Plaintiff, <br><br> vs. <br><br> ANTOINETTE SUCHENKO; and LISA GATHERS; DOES 1-10, <br><br>      Defendants. | **FIRST AMENDED COMPLAINT** <br><br><br> Case No. 2:18cv00543 DB <br><br> Judge Dee Benson |

     **COMES NOW** Plaintiff, Purple Innovation, LLC ("Purple"), and complains and alleges the following:

**Parties, Jurisdiction and Venue**

     1.     Purple is a Delaware limited liability company having its principal place of business in Alpine, Utah.  Purple's national headquarters is located Alpine, Utah, and all corporate officers are located there.  All of Purple's website development and implementation occurs in Utah.

2.     Upon information and belief, Defendant Lisa Gathers is a resident of Pennsylvania.

3.     Upon information and belief, Defendant Antoinette Suchenko is a resident of Massachusetts.

4.     Does 1-10 are other visually impaired individuals who were allegedly unable to use Purple's website whose identities have not yet been disclosed to Purple.

5.     The Court has personal jurisdiction over Defendants because each of them has purposefully availed his/herself of the privileges of conducting commercial activity in the forum state, has purposefully directed his/her unlawful actions to the forum state, has directly caused harm in the forum state, and/or has engaged in a conspiracy, the object of which was to extract money from companies in Utah, and because the exercise of jurisdiction is reasonable since Defendants should have known that they would be subject to the jurisdiction and laws of the forum state in engaging in the actions complained of herein.

6.     This Court has federal question jurisdiction over the subject matter of this action, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, and supplemental jurisdiction over the related State law claims stated herein.

7.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this lawsuit arises in relation to a website owned by, registered to, and operated by Purple out of its principal place of business in Utah, as a result of which the decisions and events giving rise to the claim at issue herein occurred within this judicial district.

SLC_3796736

**General Allegations**

8.      Purple owns and operates the website www.purple.com. That website is registered to and owned and operated by Purple from Alpine, Utah. All control of the Purple website is from Purple's offices in Alpine, Utah.

9.      Purple sells top quality mattresses direct to consumers online for lower cost by eliminating the overhead of operating brick and mortar stores.

10.      Purple does not own or operate a traditional brick and mortar retail store and does not sell mattresses from a brick and mortar location. Purple does not have any physical location whatsoever within the geographic boundaries of the District or Massachusetts or the Western District of Pennsylvania.

11.      On or about May 18, 2018, Purple received a letter from the law firms Carlson Lynch Sweet and Kilpela, LLP and Block and Leviton, LLP wherein the firm claimed to represent Suchenko, Gathers and other undisclosed visually impaired clients (i.e. names as Does 1-10 herein) who use the Internet to facilitate their access to goods and services.

12.      The letter claims that the Defendants were unable to use Purple's website and that such alleged lack of access constitutes a violation of the Americans with Disabilities Act ("ADA").  A copy of that letter is attached as Exhibit 1.

13.      The letter did not disclose the date of the Defendants' attempts to access Purple's website, any transactions that they actually attempted, or the specific obstacles they encountered when accessing the website.

14.      In fact, the letter complains of an inability to access "resort reviews."  However, Purple is not in the resort business and its website does not contain resort reviews.

3

15.     The letter makes the following affirmative representations either expressly or through implication:

      a.  That the Defendants accessed Purple's website.

      b.  The Defendants' access of Purple's website was for a legitimate purpose and as *bona fide* prospective consumers and customers of Purple.

      c.  That the Defendants, due to disability, were unable to access portions of Purple's website that made it impossible to transact business with Purple and/or utilize the Purple website as it was intended to be utilized.

      d.  That it was Defendants' intent to actually utilize the Purple website for its intended purpose.

      e.  That Purple's website is, without dispute, a public accommodation.

16.     Each of these representations is false or otherwise misleading.

17.     The letter threatens the filing of a lawsuit against Purple but advises that, in lieu of doing so, Purple could avoid the filing of the lawsuit by making a good faith settlement offer. This letter mirrors others sent by the Defendants' attorney, possibly on behalf of Defendants, to other business in Utah.

18.     The letter also implies that Purple, by taking any defensive position to the claims, would "violate the spirit and the letter of the law as set forth in F.R.Civ.P. 1."

19.     Defendant's letter does not disclose a fact well-known to the Defendants' attorneys. Specifically, that every Circuit Court that has addressed the issue has found that a website needs to have a nexus with a brick and mortar "Place of Public Accommodation" to be subject to the ADA. See, *Earll v. eBay, Inc.*, 599 Fed. Appx. 695, 696 (9th Cir. 2015); *Access Now, Inc. v. Southwest*

4

*Airlines, Co.*, 227 F. Supp. 2d 1312, 1321 (S.D. Fla. 2002) (website consisted of no particular

geographical location and, therefore, www.southwest.com was not a place of public

accommodation like a ticket counter or travel agency), aff'd, 385 F.3d 1324, 1329 (11th Cir.

2004).  The vast majority of District Courts are in accord.  *E.g., Gomez v. Bang & Olufsen*

*America, Inc.*, 2017 WL 1957182, *3 (S.D. Fla. Feb. 2, 2017) ("a website that is wholly

unconnected to a physical location is generally not a place of public accommodation under the

ADA."); *Kidwell v. Florida Comm'n on Human Relations*, 2017 WL 176897, *5 (M.D. Fla. Jan.

17, 2017) ("Plaintiff is unable to demonstrate that either Busch Gardens' or SeaWorld's online

website prevents his access to 'a specific, physical, concrete space such as a particular airline

ticket counter or travel agency.'  As a result, Plaintiff may not plead a claim based on accessibility

of an online website under Title III of the ADA."); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017,

1023-24 (N.D. Cal. 2012) (streaming video library was a website, not an actual physical place,

and under judicial precedent, it was not a place of public accommodation under the ADA), aff'd,

600 Fed. Appx. 508 (9th Cir. 2015); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1115-16

(N.D. Cal. 2011) (finding that Facebook was not a place of public accommodation in Title III

claim by mentally disabled plaintiff alleging failure to provide reasonable customer service upon

deactivation of her account); *Ouellet v. Viacom*, 2011 WL 1882780, *5 (D. Mont. Mar. 31, 2011)

("Absent allegations that a website impedes the plaintiff's 'access to a specific, physical, concrete

space[,]' and absent allegations establishing a nexus between a website and a physical place of

public accommodation, a plaintiff's allegations fail to state a claim upon which relief could be

granted."); *Peoples v. Discover Fin'l Services, Inc.*, 2009 WL 3030217, *2 (E.D. Pa. 2009)

(services available on internet website must have some connection to a physical place of

5

accommodation to fall within ADA's 'place of public accommodation' requirement), aff'd 387

Fed. Appx. 179 (3d Cir. 2010); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 545 (E.D.

Va. 2003) (AOL's chat rooms are not places of public accommodation subject to ADA).

20.     Purple displays its products in a showroom located at its headquarters in Alpine,

Utah.  Purple does not sell mattresses at its showroom.  It is not a retail location.  Purple's website

lacks the required "nexus" with a brick and mortar retail location to make the website one of the

12 enumerated "Places of Public Accommodation" that are subject to Title III of the ADA. This

fact was either known to the Defendants prior to their sending the letter or could have been easily

learned.

21.     Ironically, unlike Purple, the Attorneys for the Defendants do operate brick and

mortar offices that are open to the public.

22.     Under the ADA law offices are specifically identified as "Place of Public

Accommodation" subject to the ADA.

23.     Attached as Exhibit 2 are screen shots of the Defendants' attorneys' websites.

24.     Exhibit 2 was created using similar technology that the Defendants or their

attorneys used to create the appearance of evidence of ADA violations on Purple's website.

25.     Each image on Exhibit 2 shows an audit of the Defendants' attorneys' websites for

compliance.

26.     As can be seen, the Defendants' attorneys' websites fail to comply with the same or

similar standards that they assert against Purple and based on which they demand payment of

money.

27.     On information and belief, the Defendants' attorneys have engaged in their scheme in sending similar letters to more than 40 businesses including other Utah businesses.

28.     Attached hereto as <u>Exhibit 3</u> are copies of demand letters similar the one at issue in this lawsuit that Defendants' counsel, Carlson Lynch has sent to other Utah businesses under the same scheme employed by Defendants through their demand letter in this case.  These example letters purport to be sent on behalf of Carlson Lynch's clients, identified as "other disabled individuals throughout the United States" which includes the Defendants.

29.     Prior to initiating contact with businesses, including those in Utah such as Purple, the Defendants or their counsel troll the Internet for websites of companies located in Utah and other places, and run website scans with automated technology in order to create the appearance of evidence of violations of the ADA.

30.     The Defendants selectively target companies who they believe will both have the ability to pay significant monetary amounts and avoid asserting a defense to the claims.

31.     Once the targets in Utah, including Purple, are identified, on information and belief, the Defendants access the websites.

32.     Here, the Defendants, acting as ADA testers and not as legitimate or *bona fide* patrons of Purple, claim to have accessed Purple's Website, which is hosted in Utah. Purple does not believe that the Defendants had an intention of actually becoming consumers of Purple goods. Given the number of letters sent by counsel for the Defendants and others similarly situated, Purple does not believe that Defendants can establish from audits of their device IP address or their browsing histories that they in fact accessed Purple's website for a *bona fide* purpose prior to sending their letter.

7

SLC_3796736

33.     Defendants, through counsel, did send a letter to Purple demanding money.

34.     Prior to sending the letter to Purple in Utah, it was reasonably foreseeable to the Defendants that Purple, as the result of the letter, would have to conduct its own internal investigation in Utah, thereby disrupting its ordinary course of business, taking employees away from legitimate business endeavors, and causing Purple to suffer harm in Utah in the form of lost employee time, lost productivity, and related costs and expenses.

35.     It was further reasonably foreseeable to the Defendants, and likely one of the intended results of the letter, that Purple, as the result of the letter, would have to retain counsel and expend money in attorney's fees in order to respond to the fictitious claims, which under Utah law is recognized as an actual damage to Purple in Utah.

36.     Summarily, the Defendants, as the object of their civil conspiracy, sought out Purple in Utah as a victim of their fictitious scheme to threaten litigation under the ADA in an attempt to obtain monetary compensation in the form of settlement payments.  Their actions were expressly and intentionally directed at Purple in Utah, and Purple suffered real harm in Utah as the result.

37.     There is a direct nexus between the Defendants' contact with Purple in Utah through its website and through the letter, and the actual harm suffered by Purple in Utah.

38.     On information and belief, the Defendants have either obtained monetary payments from other companies, or have threatened actions against other companies, without any legitimate basis on law and without legal standing to pursue the claims.

39.     Attached hereto as Exhibit 4 are copies of: *OmahaSteaks.com v. Access Now* (District of Nebraska, case No. 17-cv-60); *Mazzio's LLC v. Carlson Lynch, et. al* (District of

8

Oklahoma, Case No. 16-cv-59-CVE-TLW); and *Texas Bankers Assoc. v. Carlson Lynch, et. al* (No 096-290154-17, District Court of Tarrant County, Texas).  In each of these cases, a business filed an action in response to a demand letter from Carlson Lynch alleging that their business' websites violated the ADA.

40.     The letter to Purple is part of an ongoing pattern and practice of contact within Utah with the purpose of commercial gain.

41.     Despite Defendants' conclusive statement in its letter that Purple's website violates the ADA, the Tenth Circuit has not determined under what circumstances a private entity's website must comply with Title III of the ADA, or what constitutes compliance with the ADA for a website.

42.     To the extent that the ADA applies to the website, Purple believes that the website is accessible and useable by individuals with disabilities.

43.     In light of the absence of a defined standard, Purple cannot be held liable for a violation of the ADA as such would constitute the exercise of judicial force against it under circumstances where Purple was unable to determine what obligations were required of it by that Act.

44.     Defendants' letter, in stating or otherwise implying that Defendant's accessed Purple's website, that Defendants were *bona fide* prospective customers of Purple, that Defendants had a legitimate intent to use Purple's website, and that a specific compliance obligation exists, suggested as true that which was not and suppressed that which was true despite Defendants' knowledge of the truth, in order to mislead Purple to its prejudice by entering into an agreement to

9

pay Defendants money as an attorney fee and to promise compliance with a standard with which it is legally unclear Purple is obligated to comply

45.     An actual and justiciable controversy now exists between Purple and the Defendants as to the applicability and requirements of the ADA to the website, the Defendants' standing to assert claims thereunder, and Purple's obligations to preserve documents and records in response to those claims, by reason of which the declaration of this Court adjudicating the respective rights of the parties to this lawsuit is sought herein.

**First Cause of Action**
**(Declaratory Relief, 28 U.S.C. § 2201 - Against all Defendants)**

46.     Plaintiff re-alleges and incorporates each of the foregoing paragraphs by reference as though set forth fully herein.

47.     Plaintiff seeks the declaration of this Court as to what, if any, legal standard governs its obligations to comply with the ADA in the operation of its website, insofar as such has not been legally determined within this Circuit.

48.     Plaintiff seeks the declaration of this Court as to whether any of the Defendants has standing to pursue claims under the ADA against Plaintiff.

49.     Plaintiff seeks the declaration of this Court as to whether it can be held liable for having failed to comply with that legal standard, if any such legal standard is determined to exist and be binding upon Plaintiff, consistent with the requirements of substantive due process of law in light of the previous failure within this Circuit of any such legal standard to have been clearly defined so as to put Plaintiff on proper notice of the same.

10

50.     Plaintiff seeks a declaration as to what its obligations are to preserve records and documents based on Defendants' demands.

**Second Cause of Action**
**(Negligent Misrepresentation - Against all Defendants)**

51.     Plaintiff re-alleges and incorporates each of the foregoing paragraphs by reference as though set forth fully herein.

52.     The Defendants either expressly or through implication represented to Plaintiff that an important fact was true.  Specifically: that the Defendants accessed Purple's website; the Defendants' access of Purple's website was for a legitimate purpose and as *bona fide* prospective consumers and customers of Purple; that the Defendants, due to disability, were unable to access portions of Purple's website that made it impossible to transact business with Purple and/or utilize the Purple website as it was intended to be utilized; that it was Defendants' intent to actually utilize the Purple website for its intended purpose, and that Purple's website is, without dispute, a  public accommodation.

53.     The Defendants' representations of fact were not true.

54.     The Defendants' failed to use reasonable care to determine whether the representations were true. For example, the Defendants *inter alia*, failed to determine whether Purple has a brick and mortar retail location, which information is easily ascertainable..

55.     With respect to the other facts, the Defendants were in an equal or better position than Plaintiff to know the true facts.

56.     The Defendants had a financial interest in the transaction.  In fact, it was Defendants' purpose to secure monetary gain as part of its transaction with Plaintiff.

11

57.     The Plaintiff reasonably relied on the representations by Defendants.

58.     The Plaintiff suffered damage as a result of relying on the representations in the form of lost employee time, lost productivity and related costs and expenses, and attorney's fees and costs.

**Third Cause of Action**
**(Fraud - Against all Defendants)**

59.     Plaintiff re-alleges and incorporates each of the foregoing paragraphs by reference as though set forth fully herein.

60.     Through their May 18, 2018 letter, the Defendants either expressly or through implication, represented to Plaintiff that various important facts were true. Specifically: that the Defendants accessed Purple's website; the Defendants' access of Purple's website was for a legitimate purpose and as *bona fide* prospective consumers and customers of Purple; that the Defendants, due to disability, were unable to access portions of Purple's website that made it impossible to transact business with Purple and/or utilize the Purple website as it was intended to be utilized; that it was Defendants' intent to actually utilize the Purple website for its intended purpose, and that Purple's website is, without dispute, a  public accommodation.

61.     The Defendants made the statements knowing them to be false, or recklessly and without regard for their truth.

62.     The Defendants intended that Plaintiff rely on the statements.  In fact, the letter manifests this intent in stating, "we are affording you the opportunity to make a written offer of settlement of our clients' claims" and in stating that such a solution would be "the most expedient and cost-effective means of resolving" the alleged dispute.

12

63.     The Plaintiff reasonably relied on the representations by Defendants.

64.     The Plaintiff suffered damage as a result of relying on the representations in the form of lost employee time, lost productivity and related costs and expenses, and attorney's fees and costs.

### Fourth Cause of Action
### (Fraudulent Non-Disclosure - Against all Defendants)

65.     Plaintiff re-alleges and incorporates each of the foregoing paragraphs by reference as though set forth fully herein.

66.     The Defendants knew that they are no *bona fide* patrons of Purple's website and that they did not actually access Purple's website in order to engage in any legitimate transaction with Purple.  The Defendants further knew that the only purpose of their accessing Purple's website, if such every occurred, was to enable the Defendants to assert a claim against Purple for money.

67.     Due to Defendants' failure to disclose the foregoing important facts, Plaintiff did not know them.

68.     The Defendants' failure to disclose the aforementioned facts was a substantial factor in Plaintiff's expending time and money in examining its website, thereby taking Purple's employees away from their legitimate work, and retaining counsel to address the concerns, thereby costing Plaintiff money.

13

**Fifth Cause of Action**
**(Civil Conspiracy - Against all Defendants)**

69.     Plaintiff re-alleges and incorporates each of the foregoing paragraphs by reference as though set forth fully herein.

70.      The Defendants combined and conspired with the purpose of creating the appearance of legitimate legal claims in order to extract money from Plaintiff.

71.     The Defendants were of one mind with respect to the object or course of action.

72.     In furtherance thereof, the Defendants took one or more unlawful, overt act, including *inter alia*, trolling Plaintiff's website, scraping its data for purposes of creating the appearance of evidence of violations of law, claiming that the Defendants were legitimate consumers who were denied access to engage in a commercial transaction with Plaintiff, sending a letter demanding money to Plaintiff, and engaging in follow-up communication with Plaintiff with the purpose of inducing Plaintiff to make an offer of money.

73.     As the proximate result of the conspiracy, the Plaintiff suffered damage as a result of relying on the representations in the form of lost employee time, lost productivity and related costs and expenses, and attorney's fees and costs.

**Prayer For Relief**

Wherefore, Plaintiff prays this court award damages and provide relief as follows:

1.     Plaintiff does respectfully pray that this honorable Court grant judgment for it and against the Defendants declaring the rights and obligations of the parties hereto, and specifically determining:

14

    a.   Whether, under Title III of the Americans with Disabilities Act, Plaintiff's Website is considered a place of public accommodation or otherwise falls within the purview of the Americans with Disabilities Act, and if so, the circumstances under which compliance may be required and the technical standards to which this Website must conform to satisfy the requirements of the Americans with Disabilities Act;

    b.   whether the Defendants have standing to pursue claims against Plaintiff; and,

    c.   whether the imposition of legal liability upon Plaintiff for any alleged failure of its website to comply with the Americans with Disabilities Act, where there exist no clearly defined, legally binding technical standards which provide fair notice of what is required by the ADA for website compliance, would constitute a deprivation of Plaintiff's substantive due process rights; and further finding that Defendants are guilty of actual, or in the alternative, constructive fraud  by their conduct, and awarding to Plaintiff actual and, if appropriate, punitive damages against Defendants by reason thereof.

2.    An award of compensatory damages according to proof;

3.    An award of punitive and exemplary damages according to proof; and

4.    Attorneys' fees and costs.

15

Dated August 8, 2018

**DURHAM, JONES & PINEGAR, P.C.**

/s/ Jordan K. Cameron
Douglas B. Thayer
Jordan K. Cameron
*Attorneys for Plaintiffs*

Plaintiff's Address:
123 E 200 N
Alpine, UT 84004

SLC_3796736